UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-60224-CIV-COHN/SELTZER

SPRINT SOLUTIONS, INC. and SPRINT
COMMUNICATIONS COMPANY, L.P.,

      Plaintiffs,

v.

KEDNER FILS-AMIE and PAUL FILS-AMIE,
JR., individually and d/b/a WE BUY PHONES,

      Defendants.

_____/

## ORDER GRANTING MOTION FOR SANCTIONS

**THIS CAUSE** is before the Court upon Plaintiffs' Renewed Motion for Sanctions [DE 70] ("Motion").[1] The Court has reviewed the Motion and the record in this case, notes the lack of opposition to the Motion, and is otherwise advised in the premises. For the reasons discussed herein, the Court will grant the Motion, grant default judgment in Plaintiffs' favor, and award Plaintiffs their costs and fees, subject to Defendants' ability to pay.

I. **BACKGROUND**

    A. **Sprint's Claims in this Action**

This action arises from Defendants' alleged wrongful alteration and resale of cellular telephones. Plaintiffs Sprint Solutions, Inc. and Sprint Communications Company, L.P. (collectively, "Sprint") allege that Defendants Kedner Fils-Aime

---

[1] The Court hereby grants Plaintiffs' request for leave to file their Motion in excess of the Court's usual page limits. <u>See</u> DE 69.

("Kedner") and Paul Fils-Aime, Jr. ("Paul") carried out an unlawful scheme to profit from Sprint's subsidies to its customers.

Sprint sells subsidized cellular telephones ("Sprint Phones") to consumers at prices below the cost of the phones. DE 14 (Amended Complaint) ¶ 1. Sprint recoups the subsidies through revenue from the cellular network services it provides in conjunction with the phones. Id. ¶ 19. Sprint sells the Sprint Phones subject to terms and conditions which ensure that buyers use Sprint's services. For example, Sprint requires each Sprint Phone purchaser to activate the device on Sprint's network and pay an early termination fee if he prematurely cancels his service contract. Id. ¶ 33. The terms of service also prohibit resale of the Sprint Phones. Id.

Sprint alleges that Defendants conspired to take unlawful advantage of its system of subsidies. Sprint contends that Defendants purchased new Sprint Phones from third parties at prices reflecting Sprint's subsidies, removed the phones from their original packaging, altered their programming, discarded accompanying warranties, accessories, and manuals, then resold the telephones for use on networks other than Sprint's. Id. ¶ 35. Sprint alleges that this scheme deprived it of the ability to recoup its subsidies over the course of its relationship with its customers. Id. ¶ 46.

To foster consumer recognition, Sprint also uses several registered trademarks in connection with its products and services (the "Sprint Marks"). Id. ¶¶ 27–30. Sprint alleges that Defendants' resale of modified Sprint Phones results in unauthorized use of the Sprint Marks that harms its marketplace reputation. Id. ¶¶ 49–50. On the basis of the foregoing allegations, Sprint has asserted several causes of action against Defendants, including unfair competition, tortious interference with business

relationships, civil conspiracy, unjust enrichment, fraud, and multiple counts of

trademark infringement under the Lanham Act, 15 U.S.C. § 1051, *et seq.* Am. Compl.

¶¶ 55–177.

### B. Procedural History

Sprint commenced this action solely against Kedner on January 28, 2014. DE 1.

On April 3, 2014, Sprint filed its Amended Complaint, adding Paul as a defendant.

DE 14. Defendants responded to the Amended Complaint with motions to dismiss. See

DE 23 & 32.

While Defendants' motions to dismiss were pending, Sprint began to seek

discovery. In July 2014, Sprint tried to arrange for Paul's deposition with defense

counsel. DE 41 at 2–3. The parties were unable to agree on a date, so Sprint

unilaterally noticed the deposition for August 4, 2014. Id. at 3. However, neither Paul nor

his attorney appeared for the deposition. Id. at 4–5.

Sprint also noticed Kedner's deposition for August 6, 2014. Kedner's deposition

took place at Florida's Blackwater River Correctional Facility, where Kedner was and is

incarcerated. Not only did defense counsel fail to appear at the Correctional Facility for

the deposition, but Kedner also told Sprint's attorneys that he did not know defense

counsel and had not retained her as his lawyer. DE 55-1 at 5:1–14. Kedner testified that

he was not even aware that Sprint had commenced this suit against him. Id. at 4:20–25.

However, Sprint subsequently obtained taped telephone calls from the

Correctional Facility between Kedner and Paul that took place before Kedner's

deposition. In those calls, Kedner and Paul discussed this lawsuit, and agreed that

Kedner would testify falsely that he knew nothing about the case. DE 70-1 at 3:5–4:18,

9:1–12:9.

Based upon Paul's non-appearance at his deposition, Kedner's misrepresentations, and the question of whether defense counsel represented Kedner, Sprint moved for sanctions against both Defendants. <u>See</u> DE 41 & 59. Sprint also sought the entry of a default against Kedner, taking the position that he had not yet appeared in the action because he had not authorized defense counsel to file any papers on his behalf. <u>See</u> DE 44.

To resolve the issues Sprint had raised, the Court held a hearing on September 3, 2014. At the hearing, Kedner—who appeared telephonically from prison—informed the Court that he had authorized defense counsel to act on his behalf. <u>See</u> DE 62. The Court directed defense counsel to make Paul available for a deposition, and also to respond to certain of Sprint's written discovery requests. However, the Court denied without prejudice Sprint's requests for sanctions and for a default against Kedner. DE 63.

On September 12, 2014, the Court denied Defendants' motions to dismiss. DE 66. Defendants therefore were required to answer the Amended Complaint by September 26, 2014. <u>See</u> Fed. R. Civ. P. 12(a)(4)(A). Defendants, however, did not submit an answer by this deadline. On October 10, 2014, Sprint thus filed a motion seeking to deem its factual allegations admitted based upon Defendants' failure to serve a responsive pleading. <u>See</u> DE 68.

On October 13, 2014, Sprint also renewed its request for sanctions by filing the Motion at issue. DE 70. In the Motion, Sprint reasserted the grounds for sanctions it had previously raised, and added allegations of further misconduct. According to Sprint, newly obtained recordings showed that Kedner had lied during his deposition to send its

attorneys on a "dummy mission" to investigate an incorrect address for Paul. DE 70 at
6–7.

Sprint's Motion also implicated Paul's conduct at his court-ordered deposition.
Paul proved to be a difficult deponent. Among other things, Paul resisted the examining
attorney's request to review certain documents, insisted on referring to the attorney as
"Mr. Jim," feigned a misunderstanding of straightforward questions, and asserted that
he could not recall or did not know the answer to an enormous number of questions,
even where such responses made no sense. Sprint also provided evidence that Paul
testified falsely about both the facts underlying this suit and the conduct of the litigation.
Id. at 10–15. Based upon Paul's and Kedner's deposition-related hijinks, in addition to
inadequate written discovery responses from Paul, Sprint asked the Court to sanction
Defendants with the entry of default judgment, a permanent injunction, and an award of
costs and fees. DE 70 at 26.

Defendants' response to the Motion was due by October 13, 2014. See S.D. Fla.
L.R. 7.1(c). But Defendants again failed to file a timely response. Instead, on October
14, 2014, defense counsel moved to withdraw from her representation of Defendants.
DE 73. The Court denied the motion to withdraw, finding that Florida's Rules of
Professional Conduct did not mandate the withdrawal and that defense counsel's
withdrawal would disrupt the progress of this action. DE 77. However, in light of
Defendants' apparent discovery misconduct and refusal to participate meaningfully in
litigation, the Court determined that this case would not be ready for a late-October trial
as scheduled. The Court accordingly struck the case from its trial calendar, though
leaving motion-briefing deadlines intact. DE 74.

On October 23, 2014, Defendants filed an untimely Answer to the Amended Complaint. DE 78. Sprint responded with a motion to strike the Answer, noting that Defendants had not sought leave of the Court to file their pleading out-of-time. DE 79 at 3. The motion to strike Defendants' Answer remains pending and unopposed.

On August 22, 2014, Sprint had also filed a motion seeking partial summary judgment, to which Defendants filed no response. See DE 45. On December 10, 2014, finding Sprint's evidence in support of its arguments for summary judgment undisputed, the Court granted summary judgment for Sprint on its claims for trademark infringement and false advertising under 15 U.S.C. § 1114 and § 1125. DE 80. The Court thus entered a permanent injunction prohibiting Defendants from trafficking in Sprint Phones. Id. at 11–12. The Court also directed further briefing regarding Sprint's entitlement to money damages and attorneys' fees, and the status of the action with regard to the remaining counts of the Amended Complaint on which summary judgment had not been granted. Id. at 12.

Sprint responded to the Court's Order with a request for an award of $177,025.72 in costs and fees, and judgment in its favor on the remaining claims in its Amended Complaint. See generally DE 81. Defendants, on the other hand, failed to participate in this briefing by the court-ordered deadline of January 16, 2015. Instead, on January 26, 2015, defense counsel filed a renewed request to withdraw as counsel for Defendants. Defense counsel stated that although Defendants retained her to represent them in this suit, they have since ceased to communicate with her and have refused to participate in their defense. DE 83.

Upon review of the record, it is clear that Defendants' conduct has frustrated the progress of this action. Nevertheless, a number of motions remain pending before the Court, including Sprint's Motion seeking sanctions. The Court now turns to the merits of that Motion.

## II.  LEGAL STANDARD

A federal district court possesses the inherent authority to regulate the progress of actions before it. Within this authority is the power to sanction litigants for bad-faith litigation conduct. Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764–65 (1980); Carlucci v. Piper Aircraft Corp., 775 F.2d 1440, 1447 (11th Cir. 1985); Allapattah Servs., Inc. v. Exxon Corp., 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005). Sanctions under the Court's inherent authority may include monetary penalties, adverse inferences, and the striking of claims or defenses. See, e.g., Swofford v. Eslinger, 671 F. Supp. 2d 1274, 1280 (M.D. Fla. 2009); Barash v. Kates, 585 F. Supp. 2d 1368, 1371 (S.D. Fla. 2008); Bernal v. All Am. Inv. Realty, Inc., 479 F. Supp. 2d 1291, 1338 (S.D. Fla. 2007).

In appropriate cases, a district court may even dismiss a case or enter a default judgment. Telectron, Inc. v. Overhead Door Corp., 116 F.R.D. 107, 126–27 (S.D. Fla. 1987) (citing Roadway Exp., Inc., 447 U.S. at 765). When ordering a sanction of default judgment, the Court should find by clear and convincing evidence that (1) a defendant acted in bad faith, (2) the plaintiff was prejudiced by this conduct, and (3) lesser sanctions would not adequately serve the goals of punishment and deterrence. Bernal, 479 F. Supp. 2d at 1338; Quiroz v. Superior Bldg. Maint., Inc., No. 06-21594, 2008 WL 3540599 at *5 (S.D. Fla. Aug. 12, 2008). "Bad faith exists when the court finds that a fraud has been practiced upon it, . . . or where a party or attorney knowingly or

7

recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order." Allapattah Servs., Inc., 372 F. Supp. 2d at 1373.

## III.  DISCUSSION

In its Motion, Sprint argues that Defendants' litigation conduct justifies a sanction of default judgment and an award of its costs and fees. Upon review of the record, the Court agrees that such relief is warranted. Defendants have colluded to provide false testimony. They have also obstructed the litigation process by acting combatively during depositions and failing to respond appropriately to Sprint's written discovery requests. And now, after having thrown a wrench into the gears of this case, Defendants have ceased to participate in the matter entirely. This vexatious approach to litigation is sufficient to support a finding of bad faith and an award of the sanctions Sprint has requested.

First, Sprint has shown that Defendants colluded to provide false testimony. In telephone calls on July 25, 2014, and August 4, 2014, Paul and Kedner discussed this case and advice from defense counsel. They decided that Kedner would testify falsely at his deposition on August 6, 2014, that he had no knowledge of this lawsuit or the underlying allegations, and that he was unrepresented. DE 70-1 at 3:5–4:18, 7:1–12:4; DE 70-2 at 2:13–5:11. As Defendants had agreed, Kedner testified at his deposition that he was unaware that this case had been filed, and that he neither knew nor retained defense counsel. DE 70-3 at 4:13–5:14.[2]

---

[2] Notwithstanding Kedner's false testimony that he knew nothing about this case, Paul castigated Kedner in later telephone conversations for providing Sprint's attorneys with too much information. DE 70-4 at 2:20–22 ("Bro, so what did you all answer? Like I told you, go in there and say 'I have nothing to say to you, period.'"); DE 70-5 at 8:14 ("Dog, you talked way too much, dog.").

Kedner also sent Sprint to chase its own tail by providing its attorneys with an incorrect address for Paul. At his deposition, Kedner testified that Paul lives at a house on Northeast 24th Street in Pompano Beach, Florida. DE 70-3 at 10:1–2, 20:22–21:2. But at all relevant times, Paul has lived at a house on Northeast 30th Street. See DE 70-8 at 10:4–6. In a telephone call after his deposition, Kedner bragged to Paul that he had sent Sprint's attorneys on a "dummy mission" to the Northeast 24th Street address. DE 70-7 at 4:2–5.

Paul took a similarly disruptive approach to his own deposition. After Paul failed to appear for his first scheduled deposition in August 2014, the Court ordered that he be deposed on September 19, 2014. DE 63 at 2. At the September 19 deposition, Paul was purposefully evasive. Paul responded that he did not recall or did not know the answers to an enormous number of questions, even when the questions referred to recent events or when such responses made no sense. See, e.g., DE 70-8 at 170:24–171:1 ("Q: Since eBay took down your, your site or your ability to sell phones, how do you sell phones now? A: I don't recall."); id. at 186:24–187:1 ("Q: What would refresh your recollection about whether you have any other lawsuits involving Sprint? A: I don't recall."); id. at 217:15–17 ("Q: Are you able to use [your sister's car] on a daily basis? . . . A: I don't recall.").

Paul also engaged in dilatory antics to sandbag Sprint's attorneys and run out the time for his deposition. For example, Paul refused to look at certain exhibits. See id. at 206:9–211:25. He asked Sprint's counsel to replay recordings of telephone calls several times, sometimes while fiddling with his phone or appearing otherwise distracted. See id. at 142:24–144:18. Paul feigned a misunderstanding of

9

straightforward questions; when Sprint's counsel asked Paul whether he had produced documents reflecting correspondence with Sprint, the following exchange took place:

> A: Can you define correspondence?
>
> Q: Communication, letters, e-mails.
>
> A: Can you go in depth with your definition? Can you possibly use a sentence so I can—
>
> Q: No, sir, I—the way this works is I ask the questions, and you provide the answers, so—
>
> A: Well, I—
>
> Q: —the question is, have you produced any documents that constitute or reflect any correspondence between you and Sprint?
>
> A: Mr. Jim, I cannot answer your question if I don't completely understand the sentence.

Id. at 87:5–16. As the deposition neared its end, Paul then began to periodically announce the amount of time remaining. E.g., id. at 184:8–10 ("A: 125 minutes. Q: What was that? A: 125 minutes left. The time that we have."); id. at 211:22 ("[O]ne more hour left in here."); id. at 245:25 ("30 more minutes.").

Sprint has also shown that Paul lied during his deposition. On an August 6, 2014, telephone call, Paul told Kedner that he knew of his first scheduled deposition but did not attend. DE 70-6 at 3:3–13. However, at his September 19 deposition, Paul testified that he was not aware that his deposition had been set previously for August 4. DE 70-8 at 240:2–11.

Further, Paul's testimony demonstrated that his responses to Sprint's written discovery requests were, as Sprint has accurately characterized them, "woefully incomplete." Paul testified that he used eBay and PayPal accounts to sell wireless telephones. Id. at 101:11–102:4. Presumably these accounts would have generated

records responsive to Sprint's requests for production. See generally DE 70-10.

However, Paul has not provided Sprint with any documentary discovery whatsoever

(DE 70 at 16), and he testified during his deposition that he had not attempted to gather

any documents for production (DE 70-8 at 73:2–74:24).[3]

     Having done a yeoman's work of turning the discovery process into an

unproductive circus, Defendants have now ceased to participate in the litigation of this

action. Defendants failed to respond to Sprint's motion seeking summary judgment,

which resulted in a grant of partial summary judgment in Sprint's favor. See DE 45 & 80.

Defendants failed to respond to Sprint's October 10, 2014, motion in limine seeking to

preclude them from introducing evidence they did not produce during discovery. See

DE 67. Defendants did not respond to the instant Motion for sanctions, which Sprint filed

on October 13, 2014. See DE 70. Defendants have not opposed Sprint's motion seeking

to deem all of its allegations admitted as a result of Defendants' failure to respond to the

Amended Complaint. See DE 68.[4] As if the foregoing were insufficient to demonstrate

that Defendants have abdicated their defense of this action, on January 26, 2015,

defense counsel filed a motion seeking to withdraw from her role as Defendants'

attorney, in which she stated that "Defendant[s] refuse to communicate with their

---

     [3] Paul similarly did not recall having seen Sprint's interrogatories. DE 70-8 at
92:19–96:3. The Court notes that the sparse interrogatory responses defense counsel
served on Paul's behalf were not signed by Paul, in contravention of Rule 33(b)(5) of the
Federal Rules of Civil Procedure. The sufficiency of these responses therefore is also in
question.

     [4] Defendants did file an untimely Answer to the Amended Complaint on October
23, 2014. DE 78. But as the Court noted in its Order granting Sprint's motion for partial
summary judgment, Defendants have not sought an extension of time to respond to the
Amended Complaint based upon a showing of good cause, thus the Answer is not
properly before the Court. See DE 80 at 10 n.3 (citing Fed. R. Civ. P. 6(b)(1)(B)).

defense counsel regarding the case" and "refuse to participate in their defense." DE 83 at 1.[5]

The Court has carefully considered the record, and finds that Sprint has shown by clear and convincing evidence that Defendants' foregoing vexatious litigation conduct warrants the sanction of default judgment. Defendants have approached this case in bad faith from its outset. Sprint has suffered prejudice as a result, having expended great effort responding to Defendants' misconduct, while a resolution on the merits now appears unrealistic. Finally, no sanction short of default judgment will adequately punish Defendants or deter similar future bad acts. See Bernal, 479 F. Supp. 2d at 1338.

The most indefensible of Defendants' conduct is their brazen agreement to infect the record with perjured testimony. But beyond lying under oath, Defendants have sought to disrupt this action by bringing into question the status of their representation by defense counsel, failing to appear for a noticed deposition, failing to respond appropriately to written discovery requests, motions, and court-ordered briefing, and finally by refusing to participate further in these proceedings. These acts easily support a finding of bad faith. See Allapattah Servs., Inc., 372 F. Supp. 2d at 1373.

Defendants' bad-faith conduct prejudiced Sprint. As reflected in the billing records Sprint has provided to the Court (see DE 81-2), Defendants have forced Sprint's counsel to expend many hours determining how to respond to their uncooperativeness, as opposed to pursuing the merits of the suit. But Sprint's harms go beyond the time wasted reacting to Defendants. "Our legal system is dependent upon the willingness of

---

[5] The Court notes that it has previously denied defense counsel's request to withdraw (see DE 77), and defense counsel in her January 26, 2015, submission offers no new grounds for withdrawal. Accordingly, the renewed request will also be denied.

the litigants to allow an honest and true airing of the real facts." <u>Young v. Office of U.S. Senate Sgt. at Arms</u>, 217 F.R.D. 61, 71 (D.D.C. 2003) (quoting <u>Quela v. Payco-Gen. Am. Credits, Inc.</u>, 82 Fair Empl. Prac. Cas. (BNA) 1878 (N.D. Ill. 2000)). By making a game of discovery, Defendants have deprived Sprint of the truth-finding judicial process to which it is entitled.

Finally, no lesser sanction than a default judgment against Defendants would adequately serve the goals of punishment and deterrence. Monetary penalties are insufficient in the face of Defendants' willful plan to provide false testimony and prevent a resolution of Sprint's claims on the merits. Any result but judgment for Sprint would reward Defendants' obstruction with a favorable litigation outcome. Moreover, in light of Defendants' demonstrated comfort with fabricating testimony and their disregard for their obligations to Sprint and the Court, allowing this case to proceed would only provide Defendants with further opportunities to subvert the integrity of the judicial process. <u>Accord</u> <u>Quiroz</u>, 2008 WL 3540599 at *8.

However, a simple grant of a default judgment against Defendants would still fail to compensate Sprint for the harm Defendants have caused, as Sprint is unable to quantify its damages on the record as it stands. <u>See</u> DE 81 at 2–4. Sprint proposes that the Court award its costs and reasonable fees as an alternative to damages. The Court agrees with Sprint that some monetary relief is necessary to impress upon Defendants the seriousness of their misconduct, and also to make Sprint whole for the effort it has expended as a result. Accordingly, the Court determines that an award of reasonable costs and fees to Sprint is appropriate.

Because Sprint has prevailed on its trademark infringement claims under the Lanham Act (see DE 80), 15 U.S.C. § 1117(a) also provides a legal basis for the award of Sprint's attorneys' fees. Under § 1117(a), a prevailing party may recover reasonable attorneys' fees in "exceptional cases." Exceptional cases include not only those involving willful trademark infringement, but also cases where a defendant has taken a vexatious approach to litigation. See TE-TA-MA Truth Found.-Family of URI, Inc. v. World Church of the Creator, 392 F.3d 248, 261–62 (7th Cir. 2004). For the same reason that Defendants' collusive perjury and efforts to frustrate the litigation process support a finding of bad faith to justify sanctions under the Court's inherent authority, the Court finds that Defendants' conduct renders this case an exceptional one under § 1117(a) that merits an award of attorneys' fees.

However, both the Court's inherent authority to issue sanctions and the fee-award provision of § 1117(a) must be applied equitably. See Martin v. Automobili Lamborghini Exclusive, Inc., 307 F.3d 1332, 1336–37 (11th Cir. 2002) (per curiam); Rain Bird Corp. v. Taylor, 665 F. Supp. 2d 1258, 1271–72 (N.D. Fla. 2009). In exercising its discretion to award attorneys' fees, a court therefore should take into account the sanctioned party's ability to pay. As the Eleventh Circuit has held:

> Sanction orders must not involve amounts that are so large that they seem to fly in the face of common sense, given the financial circumstances of the party being sanctioned. What cannot be done must not be ordered to be done. . . . And, sanctions must never be hollow gestures; their bite must be real. For the bite to be real, it has to be a sum that the person might actually pay. A sanction which a party clearly cannot pay does not vindicate the court's authority because it neither punishes nor deters.

Martin, 307 F.3d at 1336–37 (citations omitted). The present record does not reflect whether Defendants have the ability to pay an award of Sprint's attorneys' fees. Accordingly, the Court will direct Defendants to submit sworn affidavits regarding their

ability to pay, including detailed statements of their assets, income, and obligations. If Defendants fail to supply this information, the Court may presume that Defendants are able to pay the entirety of Sprint's costs and fees.

## IV.  **CONCLUSION**

Sprint has demonstrated its entitlement to sanctions under the Court's inherent authority. The Court determines that a default judgment and an award of costs and fees against Defendants provide the appropriate remedy given the nature of Defendants' vexatious conduct. However, the Court will require Defendants to submit financial affidavits demonstrating their ability to pay any judgment before setting the amount of the award against them. It is accordingly

**ORDERED AND ADJUDGED** as follows:

1. Sprint's Renewed Motion for Sanctions [DE 70] is **GRANTED**.

2. Default judgment is hereby entered in Sprint's favor on each pending count of its Amended Complaint [DE 14].

3. Defendants shall each submit a sworn affidavit regarding their ability to pay an award of costs and fees no later than **February 18, 2015**. Defendants should refer to Form AO 239 for the appropriate information and level of detail the affidavits should contain. In light of Defendants' demonstrated willingness to provide false information under oath, Defendants shall also support their affidavits with appropriate documentation.

4. Upon Defendants' submission of their financial affidavits, or failure to timely submit such affidavits, the Court will make findings necessary to the entry of a final judgment against Defendants fixing the amount of an award, or will conduct further proceedings as necessary.

5.      The Motion for Extension of Time to Respond and . . . Motion to Withdraw by

Robinson Caddy Law P.A. as Counsel for the Defendant[s] [DE 83] is **DENIED**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 4th day of February, 2015.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF